The Honorable Wayne Dowd State Senator P.O. Box 2631 Texarkana, AR 75502
Dear Senator Dowd:
This is in response to your request for an opinion regarding the Arkansas Freedom of Information Act ("FOIA"), which is codified at A.C.A. §§25-19-101 through -107 (Repl. 1992 and Supp. 1993). You have asked the following three questions on behalf of the Texarkana Gazette:
 1. Since the Texarkana, Arkansas Office of Economic Development has lost its Arkansas Communities of Excellence designation and has no formal ties to the Arkansas Industrial Development Commission, is it covered by the AIDC exemption in the Freedom of Information Act?
 2. Does the exemption for `files which, if disclosed would give advantage to competitors or bidders' cover a municipal government offering tax breaks, tax exemptions or a bond issue to provide incentives while trying to attract a business?
 3. If a municipal government contends release of records would give an advantage to a set number of competitors, does that city have to provide the names of said competitors to justify use of that FOIA exemption?
You have also asked whether the information sought by the TexarkanaGazette is exempt from disclosure pursuant to any exemption in the FOIA. The FOIA request in this instance, which was directed to the City of Texarkana Office of Economic Development, sought access to "all pieces of documents, letters of businesses and personal correspondence that contain the words `Tyson' in them." Letter from Lisa A. Bose-McDermott to Jolane Cook (March 24, 1995). The City cited the so-called "competitive advantage" exemption (A.C.A. § 25-19-105(b)(9)(A)) and the Arkansas Industrial Development Commission ("AIDC") exemption (A.C.A. §25-19-105(b)(9)(B)), in denying access to the requested material. See
Letters from Jolane Cook to Lisa Bose-McDermott (March 31, 1995).
In response to the first question above concerning the AIDC exemption, it is my opinion that the applicability of this exemption will turn on a factual determination regarding the particular records in question, specifically whether the records in fact constitute:
 [r]ecords maintained by the [AIDC] related to any business entity's planning, site location, expansion, operations, or product development and marketing. . . .
A.C.A. § 25-19-105(b)(9)(B) (Supp. 1993).
A recognized commentator on the FOIA has noted that this provision was "[i]ntended to further the state's interest in economic development, [and] was added to the FOIA in 1989 after uncertainty arose as to whether subsection (b)(9)(A) would adequately protect information furnished tothe AIDC by companies that it was recruiting." J. Watkins, The ArkansasFreedom of Information Act 113 (2d ed. 1994) (emphasis added), citingGannett River Publishing Co. v. Arkansas Industrial Development Comm'n,303 Ark. 684, 799 S.W.2d 543 (1990).
It seems clear from the language of § 25-19-105(b)(9)(B), and as reflected in Professor Watkins' observation, that this provision applies to AIDC records. With regard, therefore, to your specific question involving the Office of Economic Development, the office is not, as suggested in the first question above, itself "covered by the AIDC exemption. . . ." The inquiry is not focused on the Office of Economic Development and its ties to the AIDC. Rather, the relevant inquiry under § 25-19-105(b)(9)(B) is whether the records are "maintained by" or, as suggested by Professor Watkins, "furnished to" the AIDC. A question might arise in some instances concerning application of the exemption to records not actually in the possession of the AIDC.[1] Clearly, however, the exemption applies to "records of the [AIDC]. . . ." TheArkansas Freedom of Information Act, supra at 122. As noted above, this will require a factual determination.
In response to the second question regarding application of the so-called competitive advantage exemption when a city is offering incentives to businesses, it is my opinion that the exemption will apply if disclosure of the records "would give advantage to competitors or bidders[.]" A.C.A. § 25-19-105(b)(9)(A) (Supp. 1993). The existence or contemplation of tax breaks or other business incentives is not, in my opinion, included as a relevant consideration under this exemption. Rather, if substantial competitive harm is shown (see discussion below), it must be concluded that the exemption will apply regardless of methods employed to attract a business.
It is my opinion that the answer to the third question is "no" under the FOIA. There is no requirement under the FOIA that an agency denying a request must explain its decision. It should perhaps be noted, however, that as a practical matter this information will most likely have to be forthcoming in the event of an appeal of the city's decision. See A.C.A. §§ 25-19-104 (Repl. 1992) (imposing penalty against anyone who "negligently violates" the act) and 25-19-107 (Repl. 1992) (assessing fees and expenses unless the defendant's position was "substantially justified.")
With regard to your final question concerning the application of any exemption to the records sought in this instance, the factual nature of this question precludes a conclusive response. I will, however, set forth the relevant legal framework for the factual analysis.
As I have previously opined, whether the disclosure of particular records "would give advantage to competitors or bidders" (§ 25-19-105(b)(9)(A)) will depend upon the likelihood of substantial harm to the competitive position of the one submitting the information. See Op. Att'y Gen.94-015. Conclusory or generalized allegations in this regard will not suffice. Op. Att'y Gen. 87-473. The possible breach of some contractual understanding as a result of disclosure is also not a relevant consideration. Rather, specific factual or evidentiary material must be presented showing actual competition and the likelihood of substantial competitive injury from disclosure of the records. Id. This necessarily involves a case-by-case factual determination. Op. Att'y Gen. 91-390. Although the responsibility of review falls on the custodian of the records, the custodian must in turn rely upon information supplied by the person or entity claiming the exemption. Op. Att'y Gen. 87-194.
It is thus apparent that no across-the-board conclusions can be drawn in this instance regarding application of the competitive advantage exemption to all records containing the word "Tyson." A determination that all such records are exempt, in the absence of a specific showing of the likelihood of substantial competitive injury, would be contrary to the FOIA's general policy of disclosure. See generally CommercialPrinting Co. v. Rush, 261 Ark. 468, 549 S.W.2d 790 (1977). It would also be inconsistent with the requirement that the person or entity seeking nondisclosure must bear the burden of proving eligibility for the exemption. See Gannet River States Publishing Co., supra. I lack sufficient information to make any determination regarding the particular records in this instance. Each record must be evaluated based upon the above precepts.
It should perhaps be further noted, with regard to the competitive advantage exemption, that as stated in The Arkansas Freedom ofInformation Act, supra, "[i]n some circumstances, government entities, as well as private organizations subject to the FOIA, could well be placed at a competitive disadvantage if records that they have generated are made public." Id. at 121. Although the court refused to apply the exemption to Highway Department records in Arkansas Highway and Transp.Dep't v. Hope Brick Works, Inc., 294 Ark. 490, 744 S.W.2d 711 (1988), it appears that the ruling was premised upon the absence of a showing of competition. See also City of Fayetteville v. Edmark, 304 Ark. 179, 190,801 S.W.2d 275 (1990) (holding that adverse litigants are not "competitors" of the city within the meaning of § 25-19-105(b)(9)). Had there been a showing of competition in these cases, the court presumably would have proceeded to analyze the effect of disclosure on the city's competitive position.
With regard to the instant case, therefore, competition between the City of Texarkana and other entities could theoretically trigger the competitive advantage exemption. As stated above, however, it is my opinion that this exemption will only be applicable if substantial competitive injury would in all likelihood result from disclosure of the records. Without knowing precisely what records are being sought, I cannot make any conclusive determination in this regard. It should be noted, however, that as to those records which would only be advantageous to another city or to some other entity subject to the FOIA, it is my opinion that competitive injury is unlikely. While this of course ultimately requires a factual determination, it is difficult to envision competitive injury resulting from the disclosure of records that realistically are only advantageous to competing cities. The City of Texarkana would, in that instance, have access to the same records of its competitors. Under that scenario, the question arises whether the City's competitive position could actually be compromised. Substantial competitive injury would, it seems, be unlikely.
I lack sufficient information to determine whether any other FOIA exemption is potentially applicable to the records in this instance. The exemption for "[r]ecords maintained by the [AIDC]" (§ 25-19-105(b)(9)(B)) is discussed above. State income tax records are specifically exempted under § 25-19-105(b)(1). The application of any exemption requires an independent assessment of each record. The custodian's consultation with the parties involved may be necessary to facilitate this assessment. While the factual nature of the question thus prevents a conclusive opinion, the foregoing offers general guidance in addressing the underlying issues.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] A previous administration of this office opined that the AIDC exemption applies to records in the possession of the AIDC and does not extend to the same records in the possession of other public officers or employees. Op. Att'y Gen. 90-001. It has been suggested that this conclusion is suspect under the Arkansas Supreme Court's "common sense" approach to FOIA exemptions. The Arkansas Freedom of Information Act,supra at 122, citing Bryant v. Mars, 309 Ark. 480, 485, 830 S.W.2d 869
(1992). Professor Watkins states that "[s]urely the purpose of subsection (b)(9)(B) would be undermined if economic development information regarding a particular company becomes available for public inspection simply because the AIDC has furnished it to other state agencies that may have a legitimate need for it." Id. While a question may remain in this regard, I agree that a refusal to apply the exemption to AIDC records in the hands of another public agency is questionable under the "common sense approach." Bryant, supra.